**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexia Cabanillas, et al., | No. CV-20-00894-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| 4716 Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendants 4716 Inc., Frank Zanzucchi, Jason Brown, John Zanzucchi, William V. Zanzucchi, and Paul Johnson's (collectively, "Defendants") Renewed Motion to Compel Plaintiffs Cabanillas, Ingram, and Garcia to Binding Arbitration (the "Motion to Compel").[1] (Doc. 43.) Also before the Court is Plaintiffs Alexia Cabanillas, Christen Ingram, and Gabriela Garcia's (collectively, "Plaintiffs") Renewed Motion for Conditional Certification and Issuance of Notice Pursuant to Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "Motion for Certification"). (Doc. 46.) The Court will grant the Motion to Compel, deny the Motion for Certification, and dismiss this case.[2]

---

[1] Defendants' Motion to Compel incorporates by reference, *see* LRCiv 7.1(d)(2), the arguments raised in their previous motions to compel (Docs. 8, 19, 28) and their prior replies (Docs. 17, 22, 37). The Court will allow that incorporation in these circumstances. *See Ulloa v. Potter*, No. CV07-1567-PHX-SMM, 2008 WL 2561939, at *3 n.3 (D. Ariz. June 24, 2008). Consequently, the Court will also consider Plaintiffs' oppositions to those pleadings. (Docs. 10, 21, 33.)
[2] Both parties have fully briefed the issues and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

## I. BACKGROUND

Defendants own and operate Hi Liter Gentlemen's Club ("Hi Liter") in Phoenix, Arizona. (Doc. 42 ¶¶ 29.) Plaintiffs are current or former exotic dancers at Hi Liter. (*Id.* ¶¶ 3, 32.) On Plaintiffs first day of employment, each signed an Entertainment License Agreement ("ELA" or "ELAs"). (*See* Docs. 17-2, 17-3, 28-1.) The ELAs provide a notice at the beginning of the document, which provides:

> **NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND AND AGREE TO ALL OF ITS TERMS (<u>AND PLEASE NOTE THAT THIS CONTRACT CONTAINS AN AGREEMENT TO INDIVIDUALLY ARBITRATE DISPUTES AND CLAIMS, WHICH IS FOUND IN PARAGRAPH 21</u>). IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. WE SUGGEST THAT BEFORE SIGNING, YOU HAVE THIS CONTRACT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

(*See, e.g.*, Doc. 17-2 at 3.) The ELAs outline the purpose of the agreement and several terms of the agreement, including privacy, entertainment fees, taxes, license fees, and severability. (*Id.* at 3–6.)

Each ELA also includes provisions relating to arbitration and waivers of class and collective actions. (*Id.* at 6–9.) The non-mandatory arbitration provision reads:

> **<u>NOTE</u>: PROCEEDINGS IN ADMINISTRATIVE AGENCIES, SUCH AS THE NATIONAL LABOR RELATIONS BOARD, THE DEPARTMENT OF LABOR, AND THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ARE <u>NOT</u> GOVERNED OR BARRED BY THE PROVISIONS IN THIS PARAGRAPH 21. <u>YOU MAY FILE ANY CLAIM YOU WANT WITH ANY ADMINISTRATIVE AGENCY</u>.**
> **IN ORDER TO RESOLVE DISPUTES THAT MAY ARISE OUT OF YOU PERFORMING AT THIS**

**CLUB, THE CLUB HAS ESTABLISHED A PRIVATE "ARBITRATION" PROCESS SET OUT IN THIS SECTION 21. ARBITRATION IS SIMILAR TO A COURT PROCEEDING, BUT IT'S LESS FORMAL, LESS TIME-CONSUMING, AND CAN BE LESS EXPENSIVE THAN GOING TO COURT. <u>IF YOU DO NOT DESIRE TO RESOLVE DISPUTES THAT MAY COME UP IN THE FUTURE THROUGH ARBITRATION, YOU MAY EXCLUDE YOURSELF FROM THIS PROCESS BY FOLLOWING THE STEPS SET OUT IN SECTION 21(H) BELOW</u>.**

(*Id.* at 6.) The other ELAs contain substantially similar language. (*See* Docs. 17-3, 28-1.) The document then sets out detailed arbitration procedures and allows dancers the opportunity to opt out. (*See* Doc. 17-2 at 8.) The ELAs end with language stating:

> **BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT SHE HAS RECEIVED A COPY OF, AND HAS FULLY READ, THIS LICENSE AGREEMENT; THAT SHE UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF ITS TERMS; THAT SHE IS UNDER NO DISABILITY THAT WOULD PRECLUDE HER FROM UNDERSTANDING, OR BEING BOUND TO, THE TERMS OF THIS LICENSE AGREEMENT; THAT NO ONE HAS COERCED, FORCED OR INTIMIDATED HER INTO SIGNING THIS LICENSE AGREEMENT; AND THAT SHE HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING THIS LICENSE AGREEMENT'S CONSENT AND HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING BY ATTORNEYS AND ACCOUNTANTS.**

(*Id.* at 9.)

Plaintiffs filed this action, contending that Defendants misclassified them as independent contractors, rather than employees, and in turn denied them minimum wage and overtime payments in violation of the Fair Labor Standards Act ("FLSA"). (Doc. 1 ¶¶ 3, 5–7.) Based on the ELAs, Defendants filed motions to compel arbitration for

Plaintiffs Cabanillas, Ingram, and Garcia. (Docs. 8, 19, 28.) Plaintiff Kristen Ellis then filed a motion for conditional certification under the FLSA.[3] (Doc. 29.) This Court then granted Plaintiffs' request to file an amended complaint and denied those pending motions as moot. (Doc. 41.) Plaintiffs and Defendants have since refiled those same motions. (Docs. 43, 46.)

## II.     DISCUSSION

### A.     Motion to Compel

#### 1.     Legal Standard

The Federal Arbitration Act ("FAA") was enacted in response to widespread judicial hostility toward arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of the FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described this provision of the FAA as both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC*, 563 U.S. at 339 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In line with these principles, courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms. *AT&T Mobility LLC*, 563 U.S. at 339 (citations and quotations omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp.*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The Court's role under the FAA, therefore, is limited to

---

[3] Plaintiff Kristen Ellis was dismissed as a plaintiff on August 20, 2021 for failure to prosecute. (Doc. 74.) Any argument pertaining to her as a plaintiff is therefore moot.

determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016) (internal citation omitted). Generally, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). But where the issue is whether there exists an agreement to arbitrate, the party seeking to enforce an arbitration agreement bears the burden of showing that it exists. *See, e.g.*, *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962–64 (9th Cir. 2007). Courts apply state-law principles to determine whether an agreement to arbitrate is valid. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). Neither party contests that Arizona state law governs the agreements.

**2.  Analysis**

To create a valid enforceable contract, there must be "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 246 Ariz. 126, 129 (App. 2019) (citations omitted). These principles apply with no less vigor to formation of arbitration contracts. *See, e.g.*, *Estate of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc.*, 234 Ariz. 18, 21 (App. 2014). The Court agrees with Defendants that a valid agreement to arbitrate exists between the parties. Plaintiffs do not seem to dispute, and affirmatively agree at times, that a valid arbitration agreement exists. (*See* Docs. 10, 21, 33.) Indeed, Plaintiffs have noted that they "have been willing to arbitrate their claims since the beginning." (*See, e.g.*, Doc. 33 at 2; Doc. 21 at 2 ("Ingram does not oppose submitting her individual claims to arbitration.").)

Plaintiffs do, however, contest two provisions in Plaintiffs' ELAs that they claim

are substantively unconscionable. (*See, e.g.*, Doc. 45 at 3–10.) The first provision at issue in Garcia's and Ingram's agreements provides, "**ANY JUDGMENT, ORDER, OR RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS AND REASONABLE ATTORNEY FEES TO THE PREVAILING PARTY**" (the "Attorney Fees Provision"). (Doc. 17-3 at 5; Doc. 28-1 at 7.) Cabanillas' Attorney Fees Provision is nearly identical. (*See* Doc. 17-2 at 8.) Plaintiffs also note that another provision, only found in Cabanillas' ELA, is also substantively unconscionable. That provision reads: "**THE ACTUAL COSTS OF ARBITRATION (THE ARBITRATOR'S FEES AND RELATED EXPENSES) SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS APPLICABLE LAW REQUIRES THE ARBITRATOR TO IMPOSE A DIFFERENT ALLOCATION**" (the "Equal Costs Provision"). (*Id.* at 7.) Plaintiffs ask this Court to sever these provisions from each of their respective arbitration agreements. (Docs. 10, 21, 33, 45.) The Court will address each provision in turn.

Arizona courts divide the unconscionability doctrine into substantive and procedural components. *See Guglielmo v. LG&M Holdings LLC*, No. CV-18-03718-PHX-SMB, 2019 WL 3253190, at *2 (D. Ariz. July 19, 2019) (citing *Maxwell v. Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 87–89 (1995)). "Procedural unconscionability arises from unfairness in the bargaining process." *Pinto v. USAA Ins. Agency Inc. of Texas (FN)*, 275 F. Supp. 3d 1165, 1170 (D. Ariz. 2017). It "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell*, 184 Ariz. at 88–89. Substantive unconscionability, on the other hand, is concerned with the fairness of the contract terms. *Id.* at 89. "Arizona allows unconscionability to be established 'with a showing of substantive unconscionability alone, especially in cases involving either price-cost disparity or limitation of remedies.'" *Guglielmo*, 2019 WL 3253190, at *2 (citation omitted). Here, the Court will not address the procedural component because Plaintiffs only argue that

the Attorney Fees Provision and the Equal Costs Provision are substantively unconscionable.[4]

First, the Court does not find that the Attorney Fees Provision is substantively unconscionable. Plaintiffs bring their claims under federal law, namely the FLSA. (*See* Doc. 42.) Plaintiffs correctly note that "FLSA rights cannot be abridged by contract or otherwise waived." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981). The provision at issue here notes that costs and fees can be recovered by the prevailing party "**TO THE EXTENT PERMITTED BY APPLICABLE LAW**." (*See* Docs. 11-2 at 8, 11-3 at 5, 28-1 at 7.) Courts have found that the inclusion of this limiting language in similar provisions renders the provision not substantively unconscionable. *See, e.g.*, *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472, 474 (9th Cir. 2018) ("[T]he fees and expenses provision, are not unconscionable, because they contain the phrase 'except as otherwise provided by law.'"). The Court therefore finds Plaintiffs' argument on this provision unpersuasive. To be sure, if that limiting clause was not included in the Attorney Fees Provision, there could be an issue because the FLSA entitles only the prevailing plaintiff to an award of costs and fees. *See* 29 U.S.C. § 216(b). But with the clause included in the ELA provisions at issue, an arbitrator must allow the recovery of costs and fees to the extent permitted by the FLSA. Here, it is premature for this Court to engage in judicial rewriting of the offending ELA provisions because Plaintiffs suppose that an arbitrator might overlook settled law.

To the extent the Attorney Fees Provision is ambiguous, the Supreme Court has established that ambiguities in arbitration agreements must be interpreted by the arbitrator. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406–07 (2003). It

---

[4] In passing, Plaintiff Ingram notes that the "agreements are adhesive and are unconscionable such that Defendants, as the parties in superior bargaining power, drafted the agreements with vague and ambiguous language so as to deprive Ingram and other Hi Liter dancers of their due process rights." (Doc 21 at 2.) Plaintiffs do not elaborate on this argument or contend more than this conclusory statement that any ELA is procedurally unconscionable. The ELA's terms were uncomplicated and included explicit, bolded clauses in large typeface in many of the challenged areas. Even if this Court considered this argument, it finds such an argument unpersuasive. *See Bufford v. VXI Global Solutions LLC*, No. CV-20-00253-TUC-RCC, 2021 WL 229240, at *6–7 (D. Ariz. Jan. 22, 2021).

explained that courts "should not, on the basis of mere speculation that an arbitrator might interpret . . . ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved." *Id.* The Court in *PacifiCare* therefore noted that, rather than resort to speculation, "the proper course is to compel arbitration." *Id.* at 407. Here, even if there was some ambiguity between the rights guaranteed by the FLSA and the language used in the ELA regarding the shifting of certain costs, that ambiguity must be resolved by the arbitrator. Thus, the Attorney Fees Provision is not substantively unconscionable as written.

As to the Equal Costs Provision, the Court finds that there is not enough evidence to find it substantively unconscionable. Arizona courts have adopted a case-by-case approach in considering whether fees imposed by an arbitration agreement effectively deny a potential litigant the opportunity to vindicate his rights. *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252–53 (2005). An arbitration agreement is enforceable unless plaintiff presents "individualized evidence to establish that the costs of arbitration are prohibitive." *Id.* (citing *Green Tea Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). When certain provisions require plaintiffs to bear costs that might impact their ability to seek relief under the FLSA, Arizona courts look certain factors. *See Chavez v. Creative Impact Inc.*, No. CV 20-01652 PHX CDB, 2021 WL 2474512, at \*6–8 (D. Ariz. Feb. 12, 2021). "First, the party seeking to invalidate the arbitration agreement must present evidence concerning the cost to arbitrate." *Clark v. Renaissance W., LLC*, 232 Ariz. 510, 513 (App. 2013). "Second, a party must make a specific, individualized showing as to why he or she would be financially unable to bear the costs of arbitration." *Id.* This evidence must consist of more than conclusory allegations that a person is unable to pay the costs of arbitration. *Harrington*, 211 Ariz. at 253.

Here, the Equal Costs Provision only appears in Cabanillas' ELA. (Doc. 17-2.) She argues that she "would be responsible for substantial filing fees, final fees, and costs such as arbitrator compensation, which she would not face in court." (Doc. 10 at 5; Doc.

45 at 6.) Cabanillas also notes that she "cannot afford those costs as an exotic dancer." (*Id.*) Absent from the record is any evidence concerning the cost to arbitrate. Cabanillas has not established what arbitration costs or fees might be incurred. *See Harrington*, 211 Ariz. at 252-53 (refusing to find fees substantively unconscionable when litigant failed to "show arbitration will put them in any worse position than litigation," and noting the record was "speculative" about the costs of arbitration). There is also no "specific, individualized showing" as to why she would be unable to bear the costs of arbitration. Simply stating that she would face substantial fees and she cannot afford those costs is too conclusory to meet the burden both Arizona and federal law requires. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91–92; *Clark*, 232 Ariz. at 513. The Equal Costs Provision also provides that the costs will be borne equally "**UNLESS APPLICABLE LAW REQUIRES THE ARBITRATOR TO IMPOSE A DIFFERENT ALLOCATION**." (Doc. 17-2 at 7.) The ELA therefore allows the arbitrator to follow the governing law, including the FLSA, to make sure that the appropriate cost structure is followed. For these reasons, the Equal Costs Provision is not substantively unconscionable. *See Chavez*, 2021 WL 2474512, at *6–9 (rejecting a similar "equal costs" provision because the plaintiffs did not present evidence concerning the cost to arbitrate or why they could not personally bear the costs of arbitration).

The final step is to assess whether the agreement encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130. Each ELA at issue provides the same as, or substantially similar language to, the following provision:

> **ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF, OR RELATING IN ANY WAY TO, THIS LICENSE AGREEMENT, ITS TERMINATION, ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME . . . SHALL BE RESOLVED EXCLUSIVELY BY <u>BINDING ARBITRATION</u> IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (THE "F.A.A.").**
> **THIS REQUIREMENT TO ARBITRATE ANY AND ALL NON-ADMINISTRATIVE CLAIMS**

**APPLIES REGARDLESS OF WHETHER SUCH A CLAIM IS BASED UPON CONTRACT, TORT OR OTHER COMMON LAW, STATUTE, REGULATION, ORDINANCE, OR OTHERWISE.**

(*See, e.g.*, Doc. 17-2 at 6.)

The Court finds that the broadly drafted arbitration provisions cover the disputes at issue between Plaintiffs and Defendants. The clause says that any controversy, dispute, or claim arising out of the ELA will be resolved by arbitration. *See Guglielmo*, 2019 WL 3253190, at *5, 8 (finding similar language in arbitration provisions to encompass the disputes at issue). This also includes the statutory claims that Plaintiffs bring now in their Amended Complaint (Doc. 42). Again, Plaintiffs seem to concede this point because nowhere do they argue that their claims are not covered by the arbitration clauses at issue. Therefore, the arbitration clauses cover Plaintiffs' claims.

### 3. Conclusion

Plaintiffs Cabanillas, Garcia, and Ingram's ELAs are valid and enforceable agreements between the parties. By signing those agreements, Plaintiffs knowingly agreed to have their claims subject to arbitration. As neither the Attorney Fees Provision nor the Equal Costs Provision are substantively unconscionable, the Court will grant Defendants' Motion to Compel (Doc. 43).

### B. Motion for Certification

### 1. Legal Standard

The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provisions within the statute. *See* 29 U.S.C. § 216(b). "[W]orkers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt into the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). As the Ninth Circuit explained, "similarly situated" means "plaintiffs must be alike with regard to some material aspect of their litigation." *Id.* at 1114. "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the

resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id.* at 1115.

When deciding to certify a FLSA collective action, the Ninth Circuit follows a two-step inquiry. *Id.* at 1110. First, the Court makes "a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement." *Id.* at 1109. If the collective is similarly situated, the "sole consequence" is "the sending of court-approved written notice" to workers who may wish to join the suit. *Id.* at 1101 (citation omitted). Courts apply a "lenient" standard, focusing primarily though not exclusively on the pleadings, to determine whether there are "substantial allegations" of similarity. *Id.* at 1109. "Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery." *Id.* At that point, the defendant can "move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* "The district court will then take a more exacting look at the plaintiffs' allegations and the record." *Id.* If it survives the decertification motion, "the collective proceeds toward trial, at least on the questions justifying collective treatment." *Id.* at 1110.

**2.      Analysis**

Despite the lenient first-step inquiry when deciding to certify a collective action, Courts in this District have not permitted collective certification to proceed, and will dismiss the action, where "the Plaintiff and opt-in Plaintiffs are not capable of representing the class because the claims are wholly subject to arbitration." *Bufford*, 2021 WL 229240, at *8; *see also French v. Whitefeather Holdings LLC*, No. CV-20-00349/No. CV-19-00482-TUC-RCC, 2020 WL 5383531, at *3 (D. Ariz. Oct. 30, 2020). At least in the circumstances presented here, the Court agrees with that approach. Plaintiffs "have no interest in the outcome of a collective lawsuit because their individual claims cannot be litigated." *Bufford*, 2021 WL 229240, at *8; *see also Hollingsworth v. Perry*, 570 U.S. 693, 705–06 (2013) (standing requires a plaintiff to have a "direct stake in the outcome" of the case). There is no evidence provided to this Court that any putative opt-in Plaintiff

would not be subject to a valid arbitration agreement or class-action waiver. In fact, one Defendant has stated that he has reviewed every dancer's ELA during the relevant period and "[i]n every instance the entertainer executed an [ELA] that contained a clause waiving the ability to enter into a collective or class action." (Doc. 56 at 5.) The only person who Plaintiffs have identified as opting out of the arbitration agreement was dismissed from this case. (Doc. 74.)

Also, allowing a collective action to proceed would not serve the interests of judicial economy. *See Longnecker v. Am. Exp. Co.*, No. 2:14-cv-0069-HRH, 2014 WL 4071662, at *4 (D. Ariz. Aug. 18, 2014) ("[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if [the court] were to overlook facts which generally suggest that a collective action is improper.") (citation omitted). As one Court in this District noted, allowing "notice to potential opt-in litigants at this time would put the proverbial cart in front of the horse." *Bufford*, 2021 WL 229240, at *9. Given this Court's broad discretion when deciding whether to notify putative Plaintiffs under the FLSA's framework, *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989), the Court will deny Plaintiffs' Motion to Certify (Doc. 46).

### C. Dismiss or Stay the Case

Where parties enter into an enforceable arbitration agreement, the FAA requires the Court to stay proceedings pending arbitration. 9 U.S.C. § 3. The Ninth Circuit has held that, "notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). Because each ELA at issue is valid and enforceable, and because it covers all of Plaintiffs' claims, the Court finds dismissal is the appropriate remedy in this situation and will dismiss the case without prejudice. *See Meyer v. Fifth Third Bank*, 842 F. App'x 104, 106 (9th Cir. 2021) ("The district court therefore correctly held that it lacked the power to adjudicate Meyer's claims, and appropriately exercised its discretion

to dismiss the case.").

III. **CONCLUSION**

Accordingly,

**IT IS ORDERED granting** Defendants' Motion to Compel (Doc. 43).

**IT IS FURTHER ORDERED denying** Plaintiffs' Motion for Certification (Doc. 46).

**IT IS FINALLY ORDERED** directing the Clerk of the Court to dismiss this action without prejudice and close this case.

Dated this 25th day of August, 2021.

Michael T. Liburdi
United States District Judge